IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD HOUSTON,

    Petitioner,                        No. 2:06-cv-01097 ALA (HC)

    vs.

D.K. SISTO, Warden,[1]

    Respondent.                     <u>ORDER</u>

_____/

    Pending before the Court are Edward Houston's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 17), and Petitioner's Traverse (doc. 25). Also before the Court are the parties' briefs filed in response to this Court's December 19, 2007 Order requesting additional briefing on the applicability of *Irons v. Carey*, 479 F.3d 658 (9th Cir. 2007) to this matter. For the reasons discussed below,

---

[1] Petitioner has named two respondents in this case: the Board of Prison Terms and Warden Tom L. Carey. A petition for 28 U.S.C. § 2254 relief "must name 'the state officer having custody of him or her as the respondent to the petition.'" *Smith v. Idaho*, 392 F.3d 350, 354 (9th Cir. 2004) (citations omitted). Therefore, D.K. Sisto is substituted for Tom L. Carey, because Sisto is the warden where Petitioner is incarcerated. See Rule 25(d) of the Federal Rules of Civil Procedure (providing that "[a]n action does not abate when a public officer who is a party in an official capacity . . . resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name. . . ."). All claims against the Board of Prison Terms are dismissed.

Petitioner's application is denied.

## I

### A

On April 26, 1983, the Alameda County Superior Court entered judgment against Petitioner, pursuant to his pleas of guilty, to the following crimes: (1) murder in the second degree, in violation of California Penal Code § 187, with an enhancement for the use of a firearm; (2) kidnapping, in violation of California Penal Code § 209, with an enhancement for the use of a firearm; (3) five counts of robbery, in violation of California Penal Code § 211, with enhancements for the use of a firearm; and (4) two counts of possession of a firearm by a felon. He was sentenced to a term of 22 years and 8 months to life. (Doc. 1 Ex. G.)

### B

The probation officer's report, as quoted in the psychological evaluation report prepared in June 1999 for the Board of Prison Terms ("BPT"), described Petitioner's crimes as follows:

> The defendant's present offenses began with the defendant robbing five young men, ages 15 to 18, at gunpoint in a local park. He then forced one of them to give him a ride to a shopping center, again at gunpoint. And finally, in the early morning hours of the following day he wantonly killed John Carbone.

### C

Petitioner does not challenge his underlying conviction. Rather, he challenges the BPT's decision to deny him parole. In its August 14, 2003 denial of Petitioner's release on parole ("August 2003 Decision"), the BPT found as follows:

> The Panel has reviewed all information received from the public and relied on the following circumstances in concluding that you're not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison. The offense was carried out in an exceptionally violent manner. There were multiple victims in separate incidents; one was killed. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life. The motive for the crime was extremely inexplicable or very trivial in relation to the offense. These conclusions are drawn from the Statement of Facts wherein the

inmate did involve himself in the murder of Mr. John Carbone that occurred on September 12, 1981.  Mr. Carbone was the victim of a robbery and for no apparent reason he was shot in the head by the inmate . . . .  Prior to this, on the 11th, the inmate was involved in the robbery of five teenagers, waving the same weapon that he used to murder Mr. Carbone.  This is an extremely senseless murder, since apparently Mr. Carbone offered no resistance whatsoever.  The inmate does have an escalating pattern of criminal conduct.  He has failed to profit from society's previous attempts to correct his criminality that includes conviction for grand theft, for receiving stolen property, possession of marijuana, for possession of marijuana a second time, for possession of marijuana a third time, a drunk and disorderly conduct, and the instant offense.  Inmate has programmed in a limited manner while incarcerated.  He has not sufficiently participated in beneficial self-help.  He's failed to demonstrate evidence of a positive change.  Misconduct while incarcerated includes 13 [] 115A disciplinary reports, the last one being issued on July the 11th, 2002, for destruction of state property . . . .  Psychological evaluation dated 5/6/99 by Robert Wagner [] was not totally supportive and one aspect was inconclusive.  The doctor states that:

> At the time of the crime the inmate's use of PCP made him unpredictable and dangerous, leading to these instant offenses.  The behavior in prison indicates that while he has made real gains in many areas, he still follows the code of his environment that he is in to protect himself with fighting.  There may be no other choice from his perspective, but this suggests a higher than average risk of physical altercations, He is likely to be law-abiding and cooperative if left untested, but is willing to use force to protect himself as necessary, as required in prison.  This suggests an unpredictable degree of threat of force if he is felt threatened by someone else once released in the community.  On the other hand, he's a hard worker and likely to be a good candidate for parole and able to abide by the conditions of parole.

[I]n this Panel's opinion, [] this report [is] inconclusive and somewhat contradictory.  The inmate does have realistic parole plans in that he does have a place to reside in the county of the commitment offense; however, he does not have any [] employment plans.  He does have marketable skills.  The hearing Panel notes that responses to 3042 notices indicate opposition to a finding of parole suitability, specifically the District Attorney of Alameda County, and the Oakland Police Department, which was the law enforcement agency investigating the case.  The Panel makes the following findings.  That the inmate needs additional

> time in order to fully understand and deal with the causation factors that led to the commitment of the life crime.  Until progress is made, the prisoner continues to be unpredictable and a threat to others.  [] The [] prisoner's criminal history, continued negative behavior, lack of adequate program participation, along with the instant offenses, there's no indication that the prisoner would behave differently if paroled.  However, he should be congratulated and commended foe obtaining his GED while in custody, for completing Vocational Air Conditioning and Refrigeration, cor completing Vocational Upholstery, and for obtaining above average student reports.  However, these positive aspects of his behavior do not outweigh the factors of unsuitability.  In a separate decision the hearing panel finds that the prisoner has been convicted of murder and it's [sic] unreasonable to expect that parole would be granted at a hearing during the following four years.  The prisoner committed the offense in an exceptionally cruel, callous, and violent and brutal manner.  Specifically, on or about the 12th day of September 1981 he did shoot and kill the victim, Mr. John Carbone.  Mr. Carbone was 61 years of age and the inmate was 20, a month away from being 21.  Mr. Carbone was the victim of a street robbery for no reason whatsoever, after not resisting the street robbery, was shot in the head and killed.  The inmate [] a day prior to this, using the same weapon, did commit a street robbery of five teenagers.  Multiple victims in separate incidents; one was killed.  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life.  The motive foe the crime was extremely despicable and very trivial in relation to the offense.  Prisoner's prior criminality, once again, include the convictions for grand theft, receiving stolen property, possession of marijuana, possession of marijuana, drunk and disorderly, along with the current committing offenses.  The prisoner recently committed a rules violation . . . .  Recent psychological evaluation report dated 5/6/99, authored by Robert Wagner [], indicates a need for a longer period of observation, evaluation, or treatment.  Prisoner has not completed necessary programming which is essential to his adjustment and he needs additional time in order to gain such programming.  He's failed to adequately participation self-help therapy.  The correctional counselor's report dated 5/19/03 by [] Y. Miller, [] places the [] threat [] to the public as [] moderate.  The Panel recommends that the prisoner become and remain disciplinary-free, if available upgrade himself in the area of vocation just as he's been doing now.

(Pet'r's Ex. C) (internal quotation marks omitted).

### D

On June 21, 2005 the Superior Court of Alameda County denied Petitioner's state petition for habeas corpus relief, stating that:

4

>Petitioner's writ for habeas corpus is untimely. Petitioner has failed to show good cause for his delay in filing the Petition or to demonstrate that his Petition is exempt from the timeliness requirements. If petitioner's [sic] Petition is timely or exempt from the timeliness requirements, the Petition fails to state a prima facie case for relief. Even though Petitioner has submitted numerous documents in support of his Petition, review of the transcripts and documents pertaining to the August 14, 2003 hearing, indicate that there was no abuse of discretion by the Board of Prison Terms. The factual basis of the BPT's decision granting or denying parole is subject to a limited judicial review. A Court may inquire only whether some evidence in the record before the BPT supports the decision to deny parole. The nature of the offense alone can be sufficient to deny parole. (In Re Rosenkrantz (2002) 29 Cal 4th 616, 652, 658, 682[)]. The record presented to the Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, Petitioner's past criminal history, Petitioner's conduct while incarcerated, and the psychiatric report of Robert Wagner. There is nothing in the record that indicates that the Board's decision was arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated. Thus, Petitioner has failed to meet his burden of sufficiently proving or supporting the allegations that serve as the basis for habeas relief.

Petitioner filed a petition for a writ of habeas corpus before the California Court of Appeal First Appellate District. That court summarily denied the petition on August 24, 2005. Petitioner then filed a petition for review before the California Supreme Court. Citing *People v. Duvall*, 9 Cal.4th 464, 474 (1995), *In re Dannenberg*, 34 Cal.4th 1061 (2005) and *In re Rosenkrantz*, 29 Cal.4th 616 (2002), that court denied the petition for review on February 1, 2006. It provided no parentheticals explaining its citations to the three cases.

Petitioner filed an application for a writ of habeas corpus in the Northern District pursuant to 28 U.S.C. § 2254(a) on May 12, 2006. It was transferred to this Court on May 19, 2006. In adjudicating Petitioner's 2254(a) petition, this Court will review the Alameda County Superior Court's order because it is the last reasoned state court decision. *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent appeal is denied without comment, a federal court must look to the last state court decision to address a claim).

## II

Before this Court, Petitioner contends that he is entitled to habeas relief on discrete grounds. First, he alleges that the BPT is in violation of his plea agreement because it continually recharacterizes his second degree murder conviction as a first degree murder conviction during his parole hearings. Second, he alleges that the BPT is denying him good time and work time credits. Third, he contends that the BPT's denial of his parole based on his commitment offense is a violation of due process. Finally, he asserts that he is being deprived of his liberty interest in regaining his freedom because he was sentenced under the indeterminate sentencing law ("ISL").

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Challenges to parole denials are construed as procedural due process claims. "'A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

### A

As a preliminary matter, the Court turns to the parties' supplemental briefs submitted in response to our request for briefing on the applicability of *Irons*, 505 F.3d 846. Petitioner claims

that he has a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment. Respondent maintains that no decision of the United States Supreme Court has held that a state prisoner has a federally protected interest in release on parole. The Ninth Circuit has held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123 at 1127 (9th Cir. 2006). This Court is bound by that conclusion. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'").

Relative to the second element, Petitioner claims that the procedures that protect this liberty interest are inadequate; therefore, his due process rights have been violated. In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by 'some evidence' in the record." (Citation omitted). The Ninth Circuit has held that *Hill*'s some evidence standard applies to California parole release proceedings. *Sass*, 461 F.3d at 1128-29; *Irons*, 505 F.3d at 851 ("the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' . . . or is 'otherwise arbitrary'"). Respondent argues that because the Supreme Court has never applied the some evidence test to a parole decision, this Court is not required to follow *Irons*. This argument fails. *See Zuniga*, 812 F.2d at 450.

Petitioner also claims that his case is more compelling than *Irons* or *Sass*. He reasons that he has been nonviolent since he entered prison, therefore, his commitment offense does not justify denying him parole. He contends that the parole board's reliance on an unchanging factor renders its decision arbitrary. He references the Ninth Circuit's *Irons* opinion, wherein the Court stated that it "hope[s] that the Board will come to recognize that in some cases, indefinite

detention based solely on an inmate's commitment offense [] will at some point violate due process." *Irons*, 505 F.3d at 854.  The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1).  No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons* panel.  Therefore, even if the state court's denial of Petitioner's application was based solely on his commitment offense, that alone would not constitute a due process violation.

**B**

Petitioner claims that the BPT is in violation of the terms of his plea agreement because it has recharacterized his second degree murder conviction as a first degree murder conviction.  He further claims that the language of his plea agreement is ambiguous as to the terms of his sentence.  As evidence of these claims, Petitioner directs the Court's attention to the transcript of his sentencing proceedings, which read in pertinent part as follows:

> Q   [Asked of Petitioner by his counsel] Have any promises been made to you other than a specific promise concerning what sentence you will receive?
>
> A   [Answered by Petitioner] No.
>
> Q   In that regard, do you understand that if you withdraw your previously entered pleas of not guilty and enter a plea of guilty to second degree murder and guilty pleas to the other counts charged in the Information, the Court has indicated that you would be sentenced to a total of 22 years 8 months in state prison.  Do yo understand that?
>
> A   Yes. []
>
> Q   You understand that the sentence for second degree murder to which you would be entering a plea of guilty is 15 years to life.  Do you understand that?
>
> A   Yes.

| | | |
|---|---|---|
| 1 | Q | You understand that in effect that gives you what is known as a life top in prison.  Conceivably, you could be kept in prison for the rest of your life.  Do you understand that? |
| 2 | | |
| 3 | A | Yes. [] |
| 4 | Q | [Asked of Petitioner by the prosecutor] [T]he Board of Prison Terms may decide that they want to keep you in prison for life.  Do you understand that? |
| 5 | | |
| 6 | A | [Answered by Petitioner] Yes. |
| 7 | Q | Say somewhere down the line in 15 years or so [the BPT] decide[s] they are considering putting you on parole.  They must notify the District Attorney's office in this county that they are having a hearing on this issue and we can and we will appear at that hearing and try to convince them to keep you in for life.  Do you understand that? |
| 8 | | |
| 9 | | |
| 10 | A | Yes. |
| 11 | | |
| 12 | Q | [] You also understand that in considering parole, the Board of Prison Terms will have your entire record before them? |
| 13 | | |
| 14 | A | Yes |

(Sentencing Tr. 4-12).

Plea agreements entered into in state court "must be construed in accordance with state law." *Buckley v. Terhune*, 441 F.3d 688, 690 (9th Cir. 2006) (en banc).  "In California, plea agreements are construed in the same manner as all other contracts."  *Id.*  Under California law, this Court must first look to the plain meaning of the agreement's language.  *Id.*  (citing Cal. Civ. Code §§ 1638, 1644).  If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."  *Id.* (quoting Cal. Civ. Code § 1649).  If any ambiguity remains, this Court must construe it in favor of the Petitioner.  *Id.*  (citing *People v. Toscano*, 124 Cal. App. 4th 340, 345 (Cal. Ct. App. 2004) ("ambiguities [in a plea agreement] are construed in favor of the defendant")).

Any ambiguities in the language of the plea agreement proceedings are resolved by reading the transcript in context.  The plain language of the sentencing transcript indicates that

Petitioner was informed that he could spend the rest of his life in prison.  It also indicates that he was informed that the BPT would have his entire record before it during any parole hearings.  Petitioner's record includes the facts of his crime that could have lead to his conviction of first degree murder; that is, the crime with which he was originally charged.  In fact, the BPT is entitled to consider this kind of information, and assign it the weight the BPT deems appropriate.[2]  Nothing in the record demonstrates that the BPT ever actually characterized Petitioner's second degree murder as a "first degree murder." Petitioner's claim that the BPT is in violation of his plea agreement because it recharacterizes his crime is without merit.

## C

Petitioner claims that the BPT is violating his due process rights by denying him good time and work time credits for the purposes of calculating his parole release date.

In California, prisoners serving indeterminate sentences for second degree murder are not entitled to have a parole release date set unless they are found suitable for parole.  *See Dannenberg*, 34 Cal.4th at 1080 (holding that "the suitability determination precedes any effort to calculate a parole release date").  After finding an inmate suitable for parole, the BPT uses guidelines established in its regulations to calculate the inmate's parole release date.  *Id.* at 1078-79.  Good time and work time credits are then included in this calculation.  *See* Cal. Code Regs. tit. 15, § 2410 (explaining the calculation of post-conviction credit).

---

[2] Cal. Code Regs § 2281(b)

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Therefore, since Petitioner has not yet been found suitable for parole, his claim regarding his denial of good time and work time credits is unripe.

**D**

Petitioner next claims that his due process rights have been violated because he was denied parole on the basis of his commitment offense.

The Ninth Circuit has held that "some evidence" must be found by the BPT in order to support the denial of a prisoner's release on parole. *Sass*, 461 F.3d at 1128-29; *Irons*, 505 F.3d at 851("the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' . . . or is 'otherwise arbitrary'").

"[W]e must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' . . . constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Irons*, 505 F.3d at 851.  A prisoner's commitment offense, on its own, may justify parole denial if "the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Id.* at 852 (quoting *Dannenberg*, 34 Cal. 4th 1071).

Section 2402 of the California Code of Regulations sets forth the circumstances that tend to show unsuitability for parole release.  Section 2402(c)(1) provides the nature of a commitment offense may justify denial if:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the

        offense.

        (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

        (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

The BPT found that:

> The [Petitioner] committed the offense in an exceptionally cruel, callous, and violent and brutal manner. Specifically, on or about the 12th day of September 1981 he did shoot and kill [sic] [] Mr. John Carbone . . . . Mr. Carbone was the victim of a street robbery and for no reason whatsoever, after not resisting the street robbery, was shot in the head and killed. [Petitioner], a day prior to this, using the same weapon, did commit a street robbery of five teenagers. Multiple victims in separate incidents; one was killed. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life. The motive for the crime was extremely despicable and very trivial in relation to the offense.

(BPT August 2003 Decision Tr. 55:20-56:11.)

        The BPT also found that Petitioner "continues to be unpredictable and a threat to others" and that "there's no indication that the [Petitioner] would behave differently if paroled." (*Id.* 55:1-9.) The BPT referenced Petitioner's thirteen disciplinary reports, the most recent one for destruction of state property, and his psychological evaluation. (*Id.* 53:3-54:9.) The psychological evaluation shows that Petitioner is "in to protect himself with fighting" and that "[t]his suggests an unpredictable degree of threat of force if he is felt threatened by someone else once released in the community." (*Id.* 53:18-54:5.) In considering Petitioner's suitability for parole, the BPT also commended Petitioner for completing his GED, completing two vocational training programs, and "obtaining above average student reports." (*Id.* 55:9-16.) They reasoned that "[h]owever, these positive aspects of his behavior do not outweigh the factors of unsuitability."

        The BPT relied on multiple factors beyond the minimum elements of Petitioner's commitment offense to reach their decisions that he would present a danger to society if

released. Some evidence supports the BPT's decision.

**E**

Finally, Petitioner claims that the BPT's decision denied him his liberty interest in parole because he was sentenced under the ISL rather than the determinate sentencing law ("DSL"). Respondent contends that this claim is unexhausted.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). A state is provided with the requisite opportunity to pass upon a claim if a habeas petitioner "fairly present[s] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (internal quotation marks and citations omitted). This claim is missing from the petitions for habeas relief Petitioner filed in the California Court of Appeal and the California Supreme Court. As a result, the petition before us is mixed. *See Rhines v. Weber*, 544 U.S. 269, 271 (2005) (explaining that a mixed petition is one in which "a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not").[3]

When a district court is presented with a petition containing both exhausted and unexhausted claims, it has authority to "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines*, 544 U.S. at 275. The stay is lifted "[o]nce the petitioner exhausts his state remedies." *Id.* at 275-76.

---

[3] The habeas petition Petitioner filed in the Alameda County California Superior Court is not part of the record. However, that fact does not change the exhaustion analysis. To exhaust a claim, a federal habeas petitioner must present the claim to the state's highest court, even if the highest court's review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 840 (1999). "California's 'established, normal appellate review procedure is a two-tiered system;'" therefore, petitioners are required to exhaust their habeas claims in petitions for review in the California Supreme Court. *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999). Petitioner failed to do so.

However, "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts." *Id.* at 277. A district court abuses its discretion if it grants a stay when "unexhausted claims are plainly meritless." *Id.*

"[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278. Yet AEDPA "amended 28 U.S.C. § 2254 to include a provision that allows a district court to dismiss a habeas petition on the merits, notwithstanding a petitioner's failure to exhaust." *Jackson v. Roe*, 425 F.3d 654, 658 n.5 (9th Cir. 2005) (citing 28 U.S.C. § 2254(b)(2)). "After AEDPA then, a district court can dismiss a mixed petition on the merits but may not grant relief unless and until all the claims therein have been exhausted in state court." *Id.* A court may deny an unexhausted claim on the merits pursuant to section 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

Cal. Penal Code § 1170.2, the DSL, replaced the former Cal. Penal Code § 1168 in July of 1977.[4] Petitioner was sentenced in 1983. Therefore, he was sentenced under the DSL and his

---

[4] (1)  The former Cal. Penal Code § 1168.

> Every person convicted of a public offense, for which imprisonment in any reformatory or state prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a state prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.

(2)  The current Cal. Penal Code § 1168.

> Substitution of determinate sentences for prior indeterminate sentences

(a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law or for which only a single term of imprisonment in state prison is specified shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2.

(3)   Cal. Penal Code § 1170.2.

State prison inmates sentenced prior to July 1, 1977

(a) In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if he or she had committed it after July 1, 1977, the Board of Prison Terms shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony. These matters include: being armed with a deadly or dangerous weapon as specified in Section 211a, 460, 3024, or 12022 prior to July 1, 1977, which may result in a one-year enhancement pursuant to the provisions of Section 12022; using a firearm as specified in Section 12022.5 prior to July 1, 1977, which may result in a two-year enhancement pursuant to the provisions of Section 12022.5; infliction of great bodily injury as specified in Section 213, 264, or 461 prior to July 1, 1977, which may result in a three-year enhancement pursuant to the provisions of Section 12022.7; any prior felony conviction as specified in any statute prior to July 1, 1977, which prior felony conviction is the equivalent of a prior prison term as defined in Section 667.5, which may result in the appropriate enhancement pursuant to the provisions of Section 667.5; and any consecutive sentence.

(b) If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the Board of Prison Terms shall establish the prisoner's parole date, subject to subdivision (d), on the date calculated under subdivision (a) unless at least two of the commissioners of the Board of Prison Terms after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great

claim to the contrary is without merit.

Moreover, Petitioner's claim that he was sentenced under the ISL relies on an alleged error in state law. A federal writ of habeas corpus is not available to a state prisoner for an alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *Gilmore v. Taylor*, 508 U.S. 333, 348-49 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

To the extent that Petitioner asserts that his alleged constitutional due process rights to regain his freedom have been violated by the BPT because he was sentenced under the terms of a law that had been repealed, this Court "cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would

---

> bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), in which event the prisoner shall be entitled to a hearing before a panel consisting of at least two commissioners of the Board of Prison Terms as provided for in Section 3041.5. The Board of Prison Terms shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. The hearing shall be held before October 1, 1978, or within 120 days of receipt of the prisoner, whichever is later. It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At the hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration.

come here as a federal constitutional question." *Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) (quoting *Hughes v. Heinze*, 268 F.2d 864 (9th Cir. 1959)); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process," and that "alleged errors in the application of state law are not cognizable in federal habeas corpus"). Because Petitioner's claim involves the interpretation of a California statute, it is solely a question of state law, which this Court cannot reach on a petition brought pursuant to § 2254(a).

Petitioner's sentence is indeterminate. There still exists a chance that at some point he will be deemed suitable for release. That he has yet to be paroled does not convert his indeterminate sentence to a determinate one. It is clear that Petitioner's unexhausted claim does not raise even a colorable federal claim. As such, it is denied on the merits.

## Conclusion

The BPT's finding that Petitioner is unsuitable for release on parole was supported by some evidence. Therefore, the state court's denial of his petition for habeas corpus was not "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

/////

/////

**Accordingly, IT IS HEREBY ORDERED that**:

1. The application for a writ of habeas corpus is DENIED.
2. The Clerk of Court is DIRECTED to enter judgment in favor of the Respondent and close the case.

/////

DATED: July 25, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation